UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BILLIE JO DEPEW,            :
                            :CIVIL ACTION NO. 3:16-CV-1376
          Plaintiff,        :
                            :(JUDGE CONABOY)
          v.                :
                            :
CAROLYN W. COLVIN,          :
Acting Commissioner of      :
Social Security,            :
                            :
          Defendant.        :
                            :

---

## MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  (Doc. 1.)  She alleged disability beginning on January 12, 2009.  (R. 17.)  The Administrative Law Judge ("ALJ") who evaluated the claim, Randy Riley, concluded in his August 19, 2015, decision that Plaintiff had the severe impairments of urinary and fecal incontinence, Bipolar Disorder, Panic Disorder, and a remote history of alcohol abuse.  (R. 19.)  ALJ Riley found that these impairments did not meet or equal a listing when considered alone or in combination. (R. 20-21.)  He also found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain nonexertional limitations and that she was capable of performing jobs that existed in significant numbers in the national economy. (R. 21-25.)  ALJ Riley therefore found Plaintiff was not disabled from the alleged onset date through December 31, 2012, the date

last insured.  (R. 27.)  These findings were made in the Decision by ALJ Riley following remand from the Appeals Council.  In its remand order issued on May 7, 2015, the Appeals Council directed the ALJ to evaluate the severity of Plaintiff's urinary incontinence and stool leakage, give further consideration to the treating source opinion of Stephen Diltz, Jr., M.D., and evaluate the third party testimony from Plaintiff's son.  (R. 17; Doc. 9 at 2.)

In her "Statement of Errors" Plaintiff states that "[t]he ALJ erred on remand when he failed to comply with the Appeal Council order."  (Doc. 9 at 3.)  After careful review of the record and the parties' filings, the Court concludes this appeal is properly granted and this matter is remanded for expedited further consideration.

## I. Background

### A.   *Procedural Background*

As noted above, the matter was before ALJ Riley on remand from the Appeals Council.  (R. 17.)  ALJ Riley held a hearing on July 30, 2015, in Harrisburg, Pennsylvania.  (R. 17.)  Plaintiff, who was represented by an attorney, appeared at the hearing as did Vocational Expert ("VE") Paul Anderson.  (R. 33.)  Following the unfavorable decision outlined above, Plaintiff filed a request for review dated October 20, 2015.  (R. 12-13.)  The Appeals Council denied Plaintiff's request for review on May 5, 2016.  (R. 1-7.)

2

In doing so, the ALJ's decision became the decision of the Acting Commissioner.  (R. 1.)

On July 1, 2016, Plaintiff filed her action in this Court appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant filed her answer and the Social Security Administration transcript on September 12, 2016.  (Docs. 6, 7.)  Plaintiff filed her supporting brief on October 27, 2016.  (Doc. 9.)  Defendant filed her brief on December 1, 2016.  (Doc. 10.)  Plaintiff did not file a reply brief and the time for doing so has passed.  Therefore, this matter is ripe for disposition.

**B.  *Factual Background***

Plaintiff was born on March 15, 1968, and was forty-four years old on the date last insured.  (R. 25.)  She has a high school education and past relevant work as a Parking Enforcement Officer and Stores Laborer.  (*Id.*)

**1.  Impairment Evidence**

The parties have not set out a summary of impairment evidence in their briefs to the Court.  (*See* Docs. 9, 10.)  Rather, Plaintiff cites the evidence pertinent to arguments presented in the Arguments section of her brief (Doc. 9 at 3-15), and Defendant relies on the ALJ's summary as well as facts incorporated by Defendant in support of arguments asserted (Doc. 10 at 4-15).  Given this briefing approach, the Court will reference pertinent evidence in the context of the analysis of the issues presented in

this appeal.

## 2. __ALJ Decision__

As noted above, ALJ Riley issued his Decision on August 19, 2015.  (R. 21-32.)  He made the following Findings of Fact and Conclusions of Law:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 12, 2009 through her date last insured of December 31, 2012 (20 CFR 404-1571 et seq.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: urinary and fecal incontinence, Bipolar Disorder, Panic Disorder, and a remote history of alcohol abuse (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant must avoid exposure to excessive vibration and is limited to the performance of simple, routine, repetitive tasks in a work environment free from fast-paced production involving only simple work-related

4

> decisions with few, if any, workplace
> changes; no interaction with the public;
> no more than occasional interaction with
> coworkers and supervisors; and no tandem
> tasks.

6.   Through the date last insured, the
     claimant was unable to perform any past
     relevant work (20 CFR 404.1565).

7.   The claimant was born on March 15, 1968
     and was 44 years old, which is defined
     as a younger individual age 18-44, on
     the date last insured (20 CFR 404.1563).

8.   The claimant has at least a high school
     education and is able to communicate in
     English (20 CFR 404.1564).

9.   Transferability of job skills is not an
     issue in this case because the
     claimant's past relevant work is
     unskilled (20 CFR 404.1568).

10.  Through the date last insured,
     considering the claimant's age
     education, work experience, and residual
     functional capacity, there were jobs
     that existed in significant numbers in
     the national economy that the claimant
     could have performed (20 CFR 404.1569
     and 404.1569(a)).

11.  The claimant was not under a disability,
     as defined in the Social Security Act,
     at any time from January 12, 2009, the
     alleged onset date, through December 31,
     2012, the date last insured (20 CFR
     404.1520(g)).

(R. 19-27.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to

5

determine whether a claimant is disabled.[1]  It is necessary for the
Commissioner to ascertain: 1) whether the applicant is engaged in a
substantial activity; 2) whether the applicant is severely
impaired; 3) whether the impairment matches or is equal to the
requirements of one of the listed impairments, whereby he qualifies
for benefits without further inquiry; 4) whether the claimant can
perform his past work; 5) whether the claimant's impairment
together with his age, education, and past work experiences
preclude him from doing any other sort of work.  20 C.F.R. §§
404.1520(b)-(g), 416.920(b)-(g); see Sullivan v. Zebley, 493 U.S.
521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment,
the ALJ makes a finding about the claimant's residual functional

---

[1]  "Disability" is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less than 12 months . . . ."  42 U.S.C.
§ 423(d)(1)(A).  The Act further provides that an individual is
disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such
> work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists
> for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).

capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs which existed in significant numbers in the national economy.  (R. 25-26.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third

Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion.  *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted).  The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence.  If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result

but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).  "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated."  *Hernandez v. Comm'f of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions.  *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary,

in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where the ALJ's decision is explained in sufficient detail to allow meaningful judicial review and the decision is supported by substantial evidence, a claimed error may be deemed harmless.  *See*, *e.g.*, *Albury v. Comm'r of Soc. Sec.*, 116 F. App'x 328, 330 (3d Cir. 2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000) ("[O]ur primary concern has always been the ability to conduct meaningful judicial review.").  An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision.  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

Here Plaintiff additionally notes that "[t]he regulations governing the actions of the Commissioner clearly state that **the ALJ 'shall take any action that is ordered by the Appeals Council** and may take any additional action that is not inconsistent with the Appeals Council's remand order.'"  (Doc. 9 at 3 (citing 20 C.F.R. Ch. III, 404.977(b)) (emphasis added by Plaintiff).)  On the basis of this regulation, Plaintiff states that "in this case, the Court must determine whether there is enough evidence in the record to lead 'a reasonable mind' to determine that, on remand, the ALJ fully complied with the Order of the Appeals Council issued on May 7, 2015."  (Doc. 9 at 3.)

### IV. Discussion

Plaintiff asserts that the Acting Commissioner's decision should be remanded for expedited consideration because the ALJ erred on remand when he failed to comply with the Appeals Council Order.[2]  (Doc. 9 at 3, 15.)   Under this broad issue, Plaintiff asserts more specific errors which the Court will address in turn.

### A.   *Evaluation of the Severity and Effects of Plaintiff's Urinary Incontinence and Stool Leakage*

Plaintiff maintains that the ALJ made numerous errors in his attempt to comply with the Appeals Council's first directive which was to "[e]valuate the severity and effects of the claimant's urinary incontinence and stool leakage."  (Doc. 9 at 2; R. 77.) Plaintiff identifies the following errors: 1) the ALJ made erroneous findings regarding the extent of treatment prior to her date last insured; 2) the ALJ failed to consider unequivocal evidence of progression prior to her date last insured; 3) the ALJ failed to consider the "longitudinal perspective found in the new medical evidence"; and 4) the ALJ failed to consider substantial evidence presented at the second hearing.  (Doc. 9 at 4-7.)  In response to these arguments, Defendant asserts that the record does not support additional limitations, the ALJ was not required to undertake an exhaustive discussion of the record and evaluate every

---

[2]  Plaintiff seeks expedited consideration because of "the inordinate delay caused by the ALJ's second denial" and her recent diagnosis of stage IV lung cancer.  (Doc. 9 at 15.)

11

piece of evidence, and assuming the ALJ did not properly consider the effects of Plaintiff's urinary and fecal incontinence, the error should be considered harmless.  (Doc. 10 at 7-9.)  The Court concludes that the errors alleged by Plaintiff on this issue are cause for remand.

After finding that Plaintiff suffered from the severe impairment of urinary and fecal incontinence prior to the date last insured (R. 19), ALJ Riley noted that Plaintiff stated that she needed to use the bathroom nine to ten times a day, that her impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements regarding the limiting effects of the symptoms were not entirely credible as the medical evidence did not support her allegations (R. 22).  ALJ Riley discussed Plaintiff's urinary and fecal incontinence as follows:

> The record demonstrates the claimant suffers from fecal and urinary incontinence (Exhibits 13F, 19F, 22F).  Her records reveal a longstanding history of urinary incontinence that the claimant admitted to treating prior to her date last insured with only the use of poise pads.  By January 2012, the claimant also reported noticing a "very small amount" of rectal incontinence just after evacuating, and only on occasion (Exhibit 19F, page 5).  Though later records suggest the claimant reported progressive symptoms beginning in 2010, the claimant's treatment notes show evidence of progression only following the claimant's December 2012 date last insured (Exhibit 22F).  At this time, the claimant noted daily stress incontinence, urge incontinence, and frequent nocturia (Exhibit 22F).

12

> However, prior to her date last insured,
> the claimant's records show her physicians
> suggested she treat her symptoms with the
> performance of Kegel exercises.

(R. 22.)

This analysis is deficient in several respects. With one exception, ALJ Riley either provides general citation to exhibits spanning many pages or provides no citation at all. The ALJ's general citation to exhibits of record is not adequate evidentiary support for his conclusions. *See*, *e.g.*, *Gross v. Comm'r of Soc. Sec.*, 653 F. App'x 116, 121-22 (3d Cir. 2016) (not precedential). The deficit is exacerbated in that statements made without citation contain factual errors regarding treatment during the relevant time period--Plaintiff took medication for urinary incontinence well before her date last insured of December 31, 2012, and thus was treated with more than "the use of poise pads" and "Kegel exercises" (R. 22). (*See*, *e.g.*, R. 539.)

Defendant is correct that an ALJ need not discuss every piece of evidence (Doc. 10 at 7), but here, in addition to his overly broad citation to the record, the ALJ failed to reference or discuss probative evidence and the Court cannot determine from the record "whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. For example, with ALJ Riley's general reference to records post-dating Plaintiff's date last insured and conclusory dismissal of their relevance (R. 22 (citing Ex. 22F)), he does not acknowledge the Appeals Council's recognition that

13

these records offer "a longitudinal perspective on limitations that the claimant may have experienced prior to the date last insured" (R. 76) nor does he explain why he discounts the "History of Present Illness" office notes of October 28, 2013, in which the medical provider reports symptoms "progressively worsening over the last three years."  (R. 645.) Symptoms identified included urgency ("almost always"), frequency (every one to two hours) and leakage (with moderate activity).  (*Id*.)   These symptoms were reported in January 2012 (without the specificity later provided) (R. 535, 541) but ALJ Riley acknowledged only the symptoms reported after the date last insured.[3]  (R. 22.)

Defendant urges the Court to find error on this issue harmless because "Plaintiff has not identified any objective persuasive evidence whatsoever that would support added restrictions."  (Doc. 10 at 9 (citing Doc. 9 at 3-7; *Shineski v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (recognizing that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Brown v. Astrue*, 2011 WL 2624439, at 2 (3d Cir. 2011) (stating that "an error is 'harmless' when, despite

---

[3]  The history and symptoms set out in the October 28, 2013, office notes (R. 645) and provided when Plaintiff had a cystometrogram (CMG) performed on December 2, 2013 (R. 648), considered in conjunction with earlier reported symptoms (R. 535, 541) and CMG results indicating "[s]evere anatomic stress type incontinence with urodynamic evidence of significant bladder instability" (R. 649), may present a case where additional evidence is warranted regarding the likely presence and/or effects of the condition as of the date last insured.

14

the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover"))).)  Contrary to Defendant's assertion, Plaintiff has pointed to a basis for finding the error harmful: if the ALJ had considered both the old and new evidence from a longitudinal perspective, he would have found that her "frequent urination prior to the date last insured would have required much more than customary work breaks to use the bathroom."  (Doc. 9 at 6.)  Because the VE testified that all jobs would be eliminated if an individual with Plaintiff's RFC exceeded the routine and customary rest breaks (R. 41), Plaintiff's reported frequency, if credited, would present a set of facts upon which she could recover.  *See Brown*, 2011 WL 2624429, at *2.

Because the ALJ's evaluation of the severity and effects of Plaintiff's urinary incontinence and stool leakage does not meet the substantial evidence standard, the Court cannot conclude that the ALJ adequately complied with the Appeals Council's directive on the issue.  Furthermore, the Court cannot conclude this error is harmless.  Therefore, remand is warranted for a more thorough evaluation of Plaintiff's urinary and fecal incontinence severe medical impairment.

**B.   *Treating Psychiatrist's Opinion***

Plaintiff contends that, contrary to the Appeals Council directive, the ALJ failed to adequately evaluate the opinion of

15

Plaintiff's treating psychiatrist, Stephen Diltz, M.D.  (Doc. 9 at 7.)  Defendant responds that there is no merit to Plaintiff's assertion that the ALJ erred in his analysis of the opinion evidence.  (Doc. 10 at 9.)  The Court concludes Plaintiff has shown the ALJ erred on the bases alleged.

In its order remanding the case to the ALJ, the Appeals Council stated that the initial hearing decision did not contain an adequate evaluation of Plaintiff's treating psychiatrist, Stephen Diltz, M.D.  (R. 77.)  The ALJ was directed to give further consideration to this opinion

> pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence.  As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification if the opinion and medical source statement about what the claimant could still do despite the impairments through December 31, 2012 (20 CFR 404.1512).  The Administrate Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

(R. 77.)

In his September 12, 2016, Decision, ALJ Riley set out the following analysis of Dr. Diltz' opinion:

> The undersigned also gives little weight to the October 2012 assessment provided by Stephen L. Diltz, Jr, MD, suggesting the claimant has marked and extreme restrictions in multiple work-related functional areas; would require unscheduled breaks in a regular workday; would likely be absent from work

16

> more than 4 days per month; would
> depcompensate with even a minimal increase in
> mental demands; and is unable to function
> outside a highly supportive living
> arrangement (Exhibit 5F).  The opinion is
> inconsistent with his own treatment records
> showing the claimant's moods as generally
> stable and her panic symptoms as low grade.
> Additionally, the opinion is inconsistent
> with the claimant's admissions regarding her
> capacity for daily activities as discussed
> further below.[4]

(R. 23.)

Plaintiff specifically argues that the ALJ erroneously

concluded that Dr. Diltz' opinion was inconsistent with treatment

---

[4] The Decision contains the following discussion of daily activities:

> In the record, the claimant also
> described daily activities that are not
> limited to the extent one would expect, given
> the complaints of disabling symptoms and
> limitations.  Despite the claimant's
> allegations regarding limiting symptoms and
> functional restrictions, the claimant
> admitted that she remains capable of
> performing all of her personal care
> activities independently.  She also stated
> that she is able to prepare her own meals,
> clean her home, launder clothes, drive a car,
> travel independently, shop in stores, and
> manage money (Exhibit 3E).  Additionally, the
> claimant stated that she attends weekly AA
> meetings and regularly visits family,
> suggesting the claimant retains a greater
> capacity for social activities than alleged.
> While none of these factors alone is
> inconsistent with a finding of disability,
> taken together, they are suggestive of an
> individual capable of performing work
> activity on a sustained basis within the
> above residual functional capacity.

(R. 24)

17

records.  (Doc. 9 at 10.)  In support of the argument, Plaintiff cites records which are consistent with Dr. Diltz' opinion and contrast with treatment records referred to by ALJ Riley which he concluded show that Plaintiff's moods were "generally stable" and her panic symptoms were "low grade" (R. 23): on the same date as he issued his opinion Dr. Diltz noted

> "STILL DEPRESSED, ANXIOUS/AGORAPHOBIC", "OCULAR MIGRAINE", new medication was started (R. 336).  In addition, while failing to acknowledge that Dr. Dilts [sic] repeatedly adjusted medications and that Depew was even described as "REFRACTORY" or resistant to treatment, **_the ALJ instead generally relies on limited and isolated portions of the record_** that note Depew having a stable mood and low grade panic symptoms (ALJ Decision, R. 23) while failing to address the more severe portions including "UPSET/ANXIOUS/PANICKY" (R. 288); "ONGOING ISSUES" and "TEARFUL" (R. 289, 291, 299); "ANXIETY" (R. 291, 293, 294, 297, 298); "DEPRESSION" (R. 291); anxiety is "going through the roof" (R. 292); "STILL ANXIOUS", "DEPRESSED", AGORAPHOBIA (R. 293, 335, 336, 337); "ANXIOUS" (R. 295); [(]etc.); 1F, 2F, 5F, 16F).

(Doc. 9 at 10-11.)

Review of the record shows that the ALJ's analysis of the treating psychiatrist's opinion falls short of the substantial evidence standard for reasons discussed in the preceding section of this Memorandum: the ALJ does not address probative evidence and does not provide sufficient explanation or citation for his conclusory statements.  As set out above, it is the ALJ's duty to appropriately cite the record, _Gross_, 653 F. App'x at 121-22, and

18

not only to state the evidence considered which supports the result but also to indicate what evidence was rejected, *Cotter*, 642 F.2d at 706-07.  A thorough explanation of the evidence relied upon by the ALJ in discounting a medical source opinion takes on added significance in a case involving severe mental impairment in that the Third Circuit has advised that "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving mental disability." *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000).  Furthermore, in the case of mental health impairments, it is recognized that a medical source's opinion which relies on subjective complaints should not necessarily be undermined because psychological and psychiatric conditions are necessarily and largely diagnosed on the basis of a patient's subjective complaints.  *Schickel v. Colvin*, No. 14 C 5763, 2015 WL 8481964, at *11 (N.D. Ill. Dec. 10, 2015); *Hall v. Astrue*, 882 F. Supp. 2d 732, 740 (D. Del. 2012).  Courts also recognize that the work environment and home or mental health clinic environment can be completely different for a person suffering from a mental impairment marked by anxiety.  *Morales*, 225 F.3d at 319.

Pursuant to this authority, ALJ Riley's characterization of Dr. Diltz' records as "showing the claimant's moods as generally stable and her panic symptoms as low grade" (R. 23)--a statement unsupported by citation--clearly ignores contrary findings, many of

19

which are cited by Plaintiff in the excerpt from her brief quoted above.[5]  Similarly, observations in the treatment records that Plaintiff was often found cooperative in the clinical setting do not undermine her reports of anxiety, agoraphobia and depression. (*See*, *e.g.*, R. 293-297.)   Because the ALJ's analysis on its face does not provide an adequate explanation for his conclusion that Dr. Diltz' opinion was entitled to little weight, and because the Court's review of relevant treatment records shows that he mischaracterized the record, the claimed inconsistency between Dr. Diltz' opinion and his treatment records is not supported by substantial evidence.[6]

---

[5]  Although Defendant cannot do what the ALJ should have done, *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001); *Dobrowolsky*, 606 F.2d at 406-07,  citations in Defendants' brief are similarly deficient in that Defendant cites multiple page ranges, a review of which shows that they contain many reports of mental health difficulties (R. 287, 288, 291, 292, 293, 294, 335, 336, 337) in addition to occasional notations that Plaintiff's status was good or her mood was stable (R. 285, 286, 296).  (Doc. 10 at 12 (citing R. 284-301, 334-43, 452-54).)

[6] The considerations apply with similar force to ALJ Riley's assessment of Dr. Fischetto's opinion in that ALJ Riley undermines the opinion in part because it is not consistent with contemporaneous mental health treatment records which the Court assumes to be the records of Dr. Diltz.  (*See* R. 23.)   The Court also finds problematic ALJ Riley's conclusion that the opinion was entitled to little weight on the basis that he assessed Plaintiff "during an acute anxiety attack and not during her general periods of stability."  (R. 23.)   The guidance set out in the text acknowledges the variable symptoms experienced by individuals with mental health impairments and the deference due mental health professionals–without more explanation or evidence, discounting an opinion because the examiner witnessed exacerbated symptoms runs counter to the authority cited.

Regarding ALJ Riley's conclusion that Dr. Diltz' opinion is inconsistent with Plaintiff's activities of daily living (R. 23), the analysis of daily activities previously set out in the margin does not discuss the limitations found in the record which Plaintiff identifies in her brief (Doc. 9 at 11).  With this failure to acknowledge and analyze probative evidence, the Court cannot conclude that the inconsistency found by the ALJ is valid.

For all of these reasons, the ALJ's consideration of Dr. Diltz' opinion does not meet the substantial evidence standard and the Court cannot conclude that the ALJ adequately complied with the Appeals Council's directive on the issue.  Because Dr. Diltz' opinion is consistent with Dr. Fischetto's opinion and the ALJ's analysis relied in part on activities of daily living, further consideration of the treating and examining source opinions is required as is a more thorough review of evidence related to activities of daily living.  Further, because the Court concludes the ALJ improperly analyzed medical source opinions and activities of daily living, his conclusions regarding Plaintiff's RFC and her ability to engage in full-time work are not supported by substantial evidence.  Therefore, these aspects of the ALJ's decision must also be addressed upon remand.

### V. Conclusion

For the reasons discussed above, this matter is remanded for further consideration.  For the reasons outlined by Plaintiff (Doc.

21

9 at 15), **further proceedings are to be EXPEDITED and a decision made in compliance with this Memorandum is to be rendered as soon as practicable.** An appropriate Order is filed simultaneously with this Memorandum.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: January 26, 2017